UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN D. G., an Individual,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>    Defendant. | Case No.: 5:20-00310 ADS<br><br>MEMORANDUM OPINION AND ORDER |

I. **INTRODUCTION**

Plaintiff Kristin D. G.[1] ("Plaintiff") challenges Defendant Andrew M. Saul, Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial of her application for a period of disability and disability insurance benefits ("DIB"). Plaintiff contends that the Administrative Law Judge ("ALJ") improperly assessed the

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

relevant medical evidence of record and her subjective statements of record and testimony regarding her symptoms and limitations. For the reasons stated below, the decision of the Commissioner is affirmed, and this matter is dismissed with prejudice.

## II. FACTS RELEVANT TO THE APPEAL

Plaintiff protectively filed for DIB on February 22, 2017, stating that the following conditions limited her ability to work: "back injury; depression; left hip injury; left leg injury; canal stenosis; disc bulge; hypertrophy of the ligamentum flavum; degenerative facet changes; annular fissure; and degenerative disc and endplate." (Administrative Record "AR" 57-58). When asked at the Administrative hearing what prevents her from working, Plaintiff testified of the following conditions: pain in her lower back and both legs (primarily her left) and depression. (AR 41-42, 49). Plaintiff's attorney stated at the hearing that Plaintiff's primary problem involves her lumber spine, which includes leg, hip and lower extremity pain. (AR 38). Plaintiff testified that she was involved in an accident in 2007 with injuries to her left leg and hip, resulting in a rod being surgically placed down her entire left femur (which was subsequently removed) and her hip having to be rebuilt. (AR 42). She stated that she has experienced pain since her 2007 accident, but that it got worse in 2016 after she made a trip to Arizona. (AR 42-43).

The majority of Plaintiff's past work experience is as a medical billing collector. She performed this job for three different employers, from 2009-2010 and then from 2012-2016. (AR 37; 165-69). Plaintiff stopped working in July of 2016, at the time having been employed by Loma Linda University Medical Center in medical collections. (AR 40). Plaintiff testified that prior to her stopping work, things had not been going

very well as she was having to leave work all the time and go home because she was in tears from pain in her lower back and leg. (AR 41).

Plaintiff testified that she now spends most days in bed, with a heating pad on her back. (AR 38, 45). Plaintiff stated that her husband and family do most of the chores around the house, but that she does drive herself and shop for necessary items, as well as wash and fold laundry. (AR 45, 224). On a form completed on March 6, 2017 for the Agency, Plaintiff stated that she takes medicine for nerve pain, muscle relaxers and depression medication. (AR 230) Plaintiff was prescribed Prozac by her primary care physician in May 2017, but was not prescribed psychiatric medication before this date, nor has she seen a specialist for her depression. (AR 35, 47). Plaintiff testified that she did not see any further specialists because the co-payments are a financial burden. (AR 48). She stated that she used to take narcotics, but she became dependent and kept having to take more and more to reduce her pain. Id. Plaintiff therefore stated that she stopped taking the narcotic because it stopped working for her. Id. At the Administrative hearing on March 6, 2019, Plaintiff testified that she was taking up to nine Norcos per day (AR 43). Plaintiff stated that she stopped taking Norco for a year and tried different medications for the pain, but none gave her any relief and so she went back on Norco. (AR 44). She testified that she now takes three Norcos a day. Id. Plaintiff also testified that none of the pain medications helped her. (AR 43). Plaintiff further testified that she has tried epidurals, pain medication, and physical therapy, none of which has had any lasting benefit. (AR 43-44).

## III. PROCEEDINGS BELOW

### A. Procedural History

Plaintiff filed an application for DIB on February 22, 2017, alleging a disability onset date of August 1, 2016. (AR 163-64). Plaintiff's claims were denied initially on June 13, 2017 (AR 83-84) and upon reconsideration on August 25, 2017 (AR 91-95). Thereafter, on September 7, 2017, Plaintiff filed a request for an administrative hearing. (AR 97). A hearing was held before ALJ Paula M. Martin on March 6, 2019. (AR 30-56). Plaintiff, represented by counsel, appeared and testified at the hearing. Also appearing and testifying at the hearing was vocational expert Lorian I. Hyatt. (Id.).

On April 1, 2019, the ALJ found that Plaintiff was "not disabled" within the meaning of the Social Security Act.[2] (AR 12-25). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on January 15, 2020. (AR 1-6). Plaintiff then filed this action in District Court on February 18, 2020, challenging the ALJ's decision. [Docket "Dkt." No. 1].

On July 2, 2020, Defendant filed an Answer, as well as a copy of the Certified Administrative Record. [Dkt. Nos. 13, 14]. The parties filed a Joint Submission on November 3, 2020. [Dkt. No. 17]. The case is ready for decision.[3]

---

[2] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A).

[3] The parties filed consents to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment. [Dkt. Nos. 9, 10].

## B. Summary of ALJ Decision After Hearing

In the decision (AR 15-25), the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.[4] 20 C.F.R. § 404.1520(a). At **step one**, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since August 1, 2016, the alleged onset date. (AR 17). At **step two**, the ALJ found that Plaintiff had the following severe impairments: (a) status post left femur fracture; (b) degenerative disc disease of the lumbar spine with radiculitis; and (c) hip tendonitis. (AR 17). At **step three**, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (AR 20).

The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC")[5] to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), with the following exceptions:

> [Plaintiff can] occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes or scaffolds; and can have no exposure to hazards such as machinery or unprotected heights.

(AR 20).

---

[4] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five. Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

[5] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. §416.945(a)(1).

At **step four**, the ALJ found that Plaintiff is capable of performing her past relevant work as a collection clerk. The ALJ found that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (AR 24). As such, the ALJ did not proceed to step five and determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from August 1, 2016, through the date of the decision, April 1, 2019. (AR 25).

## IV. ANALYSIS

### A. Issues on Appeal

Plaintiff raises two issues for review: (1) whether the ALJ properly assessed the medical evidence in assessing her RFC; and (2) whether the ALJ properly assessed Plaintiff's statements of record and testimony concerning her impairments, symptoms, and limitations in assessing her RFC. [Dkt. No. 17 (Joint Submission), 4].

### B. Standard of Review

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g). The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)). A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless, that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citation omitted); Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

**C.    The ALJ Properly Evaluated the Medical Evidence**

Plaintiff contends that the ALJ failed to consider substantial and significant evidence of record which supports her claim of disability in the ALJ's assessment of her RFC. Defendant argues that the ALJ properly considered and weighed all relevant

medical evidence of record. Moreover, Defendant points out that Plaintiff fails to point to any evidence that the ALJ did not consider.

### 1. Standard for Weighing Medical Opinions

The ALJ must consider all medical opinion evidence. 20 C.F. R. § 404.1527(b). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). Where the treating doctor's opinion is not contradicted by another doctor, it may only be rejected for "clear and convincing" reasons. Id. (citing Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting Bayliss, 427 F.3d at 1216).

"Substantial evidence" means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Robbins, 466 F.3d at 882). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted); see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding ALJ had properly disregarded a treating physician's opinion by setting forth specific and legitimate reasons for rejecting the physician's opinion that were supported by the entire record).

As noted above, an RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. §§ 404.1545(a)(1). Only the ALJ is responsible for assessing a claimant's RFC. See 20 C.F.R. § 404.1546(c). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545).

### 2. All Medical Evidence of Record Was Properly Considered

Plaintiff first seems to argue that the ALJ did not properly assess her RFC because she did not fully adopt one of the medical opinions of record. Plaintiff misinterprets the role of the ALJ in assessing the RFC of a claimant. As noted above, the ALJ, and not a medical professional, is the person responsible for determining a claimant's RFC. See 20 C.F.R. § 404.1546(c); Vertigan, 260 F.3d at 1049. In other words, a claimant's RFC is a legal finding, not a medical finding. Thus, the ALJ is not under any obligation to adopt any particular medical opinion in full in deciding a claimant's RFC.

Here, the ALJ gave the opinions of the State agency medical consultants and the internal medical consultative little weight as they found Plaintiff had the ability to perform a range of light work. (AR 24). The ALJ did a thorough review of the medical evidence of record (AR 22-24) and found that the objective medical evidence does not support these opinions as the records contain evidence of greater impairment than that assessed by these professionals. The ALJ found the evidence of record supported a finding that Plaintiff could perform only sedentary work with occasional postural limits. Thus, the ALJ did a thorough review of the medical evidence in finding Plaintiff more limited than that assessed by the majority of the medical opinions of record.

Plaintiff takes issue, however, with the fact that the ALJ did not adopt the medical of Bryant Leung, M.D., her treating physician, that Plaintiff was unable to work or tolerate full-time work. The ALJ determined to give the opinion little weight, however, "because the assessments are supported by relevant objective medical evidence, inconsistent with evidence from other medical and nonmedical sources, and contradicted by other factors." (AR 24). The ALJ detailed and cited to evidence in the record to support each of these grounds. Id. See 20 C.F.R. § 404.1527(c)(4); Burrell v. Colvin, 775 F.3d 1133, 11140 (9th Cir. 2014) ("An ALJ may discredit [even] treating physicians' opinions that are conclusory, brief and unsupported by the record as a whole or by objective medical findings."). Thus, the ALJ properly considered and discussed all medical opinions of record, as well as the entirety of Plaintiff's medical records, in assessing the Plaintiff's RFC.

Plaintiff also claims error in the ALJ assessing her impairment of depression as non-severe. Plaintiff contends that the evidence of record, including Plaintiff's statements and testimony and medical notes, reference Plaintiff's depression. Plaintiff also contends that it was improper for the ALJ to have given great weight to the opinion of Kim Goldman, Psy.D., a non-treating consultative examiner who found Plaintiff had no limitations to at most mild limitations after examining Plaintiff on May 22, 2017. (AR 276). Plaintiff argues that Dr. Goldman's assessment is a one-time snapshot of her mental state, whereas the totality of evidence in the record shows her depression is severe.

The ALJ, however, did a detailed and thorough review of Plaintiff's medically determinable impairments of depressive disorder, anxiety disorder and personality disorder in her opinion. (AR 18-20). The ALJ considered and thoroughly discussed the

four broad areas of mental functioning known as the "paragraph B" criteria in evaluating Plaintiff's mental disorders. Finding that the impairments caused no more than "mild" limitation in any of the four functional areas, the ALJ assessed the mental impairments as non-severe. (AR 19). Other than making a blanket statement that there are references to Plaintiff's depression throughout the evidence of record, Plaintiff cites to no evidence in the record establishing that she has mental limitations that substantially impact her ability to work. Indeed, as pointed out by Defendant, the records cited to by Plaintiff only reflect Plaintiff's complaints and diagnosis. Diagnosis of an impairment is not sufficient to demonstrate disability. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability."); Barker v. Secretary of HHS, 882 F.2d 1474, 1477 (9th Cir. 1989) (Disability is established only if there is proof of a related functional loss that prevents a claimant from working).

Furthermore, the ALJ properly relied on the opinion of Dr. Goldwyn, who fully examined Plaintiff and found only mild mental impairments. (AR 276). Again, Plaintiff cites to no evidence to contradict the functional findings of Dr. Goldwyn. Rather, Plaintiff merely cites to her complaints of and diagnosis of depression in the record. Thus, there was no error by the ALJ in giving great weight to the opinion of Dr. Goldwyn. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding the opinion of a consultative examiner that rests on the examiner's own independent examination and clinical findings alone was substantial evidence).

Finally, Plaintiff also takes issue with the ALJ's assessed RFC of her physical limitation. Plaintiff argues the totality of the medical evidence of record demonstrates that she cannot perform this RFC for sedentary work with occasional postural

limitations. Plaintiff contends that she would need to take unscheduled work breaks and/or have multiple absences from work due to her physical limitations. Plaintiff, however, cites to no medical evidence of record to support her claim. The only evidence in the record of her need to take unscheduled breaks and absences is her own subjective statements. The ALJ thoroughly discussed and reviewed the medical records in finding that they support the assessed RFC of Plaintiff's physical limitations.

The Court therefore finds the ALJ properly assessed the medical evidence of record. Plaintiff would simply prefer the ALJ to have a different interpretation of the medical evidence than that assessed. However, it is the role of the ALJ to resolve any conflicts or ambiguities in the medical record. See Tommasetti, 533 F.3d at 1041-42 ("The ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."): Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (holding that it is the ALJ's job to resolve any conflicts). See Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (citation omitted); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). Indeed, an ALJ is not obligated to discuss "every piece of evidence" when interpreting the evidence and developing the record. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted). Similarly, an ALJ is also not obligated to discuss every word of a doctor's opinion or include limitations not actually assessed by the doctor. See Fox v. Berryhill, 2017 WL 3197215, *5 (C.D. Cal. July 27, 2017); Howard, 341 F.3d at 1012. The Court finds no error by the ALJ in considering the medical record in assessing Plaintiff's RFC.

**D. The ALJ Properly Evaluated Plaintiff's Testimony**

Plaintiff asserts that the ALJ did not properly evaluate her testimony regarding her symptoms and limitations. Defendant, on the other hand, contends the ALJ properly evaluated Plaintiff's subjective statements, finding them inconsistent with the record.

1. Legal Standard for Evaluating Claimant's Testimony

A claimant carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Once the claimant meets that burden, medical findings are not required to support the alleged severity of pain. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("claimant need not present clinical or diagnostic evidence to support the severity of his pain") (citation omitted)). Defendant does not contest, and thus appears to concede, that Plaintiff carried her burden of producing objective medical evidence of her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms.

Once a claimant has met the burden of producing objective medical evidence, an ALJ can reject the claimant's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton, 331 F.3d at 1040. To discredit a claimant's symptom testimony when the claimant has provided objective medical evidence of the impairments which might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ "may reject the claimant's testimony about the severity of those symptoms only by

providing specific, clear and convincing reasons for doing so." Brown-Hunter, 806 F.3d at 489 ("we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination"); Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017).

The ALJ may consider at least the following factors when weighing the claimant's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Thomas v. Barnhart, 278 F.3d 948, 958-59 (9th Cir. 2002) (citing Light, 119 F.3d at 792). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Id. at 959 (citing Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999)).

### 2. The ALJ provided Clear and Convincing Reasons Supported by Substantial Evidence

Having carefully reviewed the record, the Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.[6] The ALJ found that Plaintiff's subjective complaints were not entirely consistent with the medical evidence of record, the duration and frequency of symptoms and Plaintiff's daily activities. (AR 20-22). The ALJ noted that the assessed RFC took into account Plaintiff's complaints of limitation. Plaintiff, however, contends that the ALJ failed to take Plaintiff's complaints into consideration when assessing the RFC.

---

[6] The ALJ did not make a finding of malingering in her opinion. (AR 15-25).

A review of the decision reflects that the ALJ did not "dismiss" Plaintiff's testimony and medical records concerning her pain, symptoms, and level of limitation. Rather, the ALJ considered Plaintiff's testimony in assessing her with an RFC for sedentary work, with occasional postural limitations. (AR 19-20).

The ALJ performed a thorough review of Plaintiff's medical record and found that it did not fully support Plaintiff's allegations of disabling conditions. (AR 21-23). The ALJ properly considered how consistent Plaintiff's subjective symptom statements were with this objective medical evidence. 20 C.F.R. § 404.1529(c)(2). This could not be the ALJ's sole reason for rejecting Plaintiff's statements about her symptoms, but it was a factor that the ALJ was permitted to consider. Id.; see also Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (while a claimant's subjective statements about symptomology "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor"). Thus, the lack of consistency between Plaintiff's medical records and her testimony was a proper basis for the ALJ's discounting Plaintiff's testimony.

Plaintiff also contends that the ALJ improperly pointed to her level of daily activity, such as doing laundry and going shopping for necessities, as a basis for dismissing her testimony. Plaintiff argues that none of these activities show that she can perform full time work. Plaintiff is mistaken, however. The ALJ cited to Plaintiff's statements in the record of her daily activities to show the inconsistency with her testimony at the Administrative hearing, not her ability to perform full time work. See Thomas, 278 F.3d at 958-59 (holding that an ALJ may consider inconsistencies either in

the claimant's testimony or between the claimant's testimony and his or her conduct when weighing the claimant's credibility).

An ALJ is permitted to consider daily living activities in his credibility analysis. See 20 C.F.R. § 404.1529(c)(3) (daily activities are a relevant factor which will be considered in evaluating symptoms); see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors"). Daily activities may be considered to show that Plaintiff exaggerated his symptoms. See Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ properly recognized that daily activities "did not suggest [claimant] could return to his old job" but "did suggest that [claimant's] later claims about the severity of his limitations were exaggerated."). Although Plaintiff takes issue with this, it was proper for the ALJ to have considered daily living activities in his credibility analysis. See Burch, 400 F.3d at 681.

Finally, the ALJ noted that Plaintiff's statements concerning her limitations "conflict with the objective medical evidence and other evidence about the *duration and frequency of symptoms*." (AR 21, italics added). The ALJ noted that the evidence of record is "replete with examples of the claimant's improved condition." (AR 22). Discussing and citing to evidence of improvement throughout the medical record, the ALJ noted that the "duration and frequency of the claimant's symptoms does not support the level of symptomology that the claimant alleged." Id. It was entirely proper for the ALJ to review Plaintiff's longitudinal treatment record in assessing the asserted symptoms and limitations. See 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (the type, dosage, effectiveness, and side effects of medication and the treatment other than medication

that a claimant is receiving or has received are relevant to assessing his subjective complaints). Thus, the ALJ did not err in considering that the duration and frequency of Plaintiff's symptoms in the record do not support the level of symptoms alleged by Plaintiff in support of her claim.

## V. **CONCLUSION**

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED, and the action is DISMISSED with prejudice. Judgment shall be entered accordingly.

DATE: June 30, 2021

        /s/ Autumn D. Spaeth
THE HONORABLE AUTUMN D. SPAETH
United States Magistrate Judge